**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Karen Margarita Zelaya Alberto and S.E.A.Z. (a minor),<br><br>                              *Petitioners*,<br><br>        v.<br><br>U.S. Department of Homeland Security ("DHS"), *et al.*,<br><br>                              *Respondents*. | CASE NO. |

**PROPOSED ORDER**

Having considered Petitioners' Emergency Motion for a Stay of Removal, the Court

enters the following order:

IT IS ORDERED that Petitioners' Emergency Motion for a Stay of Removal is

GRANTED during the pendency of proceedings in the above-captioned case.


SIGNED this _____ day of _____, 2015


                                                          _____

                                                          Hon.

1

BMS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Karen Margarita Zelaya Alberto and S.E.A.Z. )
(a minor), )
                 *Petitioners,* )
  )
v. )
  )
U.S. Department of Homeland Security )
("DHS"); U.S. Customs and Border )    Case No:
Protection ("CBP"); U.S. Citizenship and )
Immigration Services ("USCIS"); U.S. )
Immigration and Customs Enforcement )
("ICE"); Jeh Johnson, Secretary of DHS; )
Loretta E. Lynch, Attorney General of the )
United States; R/ Gil Kerlikowsky, )
Commissioner of CBP; Sarah Saldaña, )
Director of ICE; Leon Rodriguez, Director of )
USCIS; Velda Griffin, Philadelphia Assistant )
Field Office Director, CBP; Thomas Decker, )
Philadelphia Field Office Director, ICE; )
Diane Edwards, Director, Berks County )
Residential Center, )
*Respondents.* )

**15    6404**

### EMERGENCY MOTION FOR STAY OF REMOVAL

Petitioners Karen Margarita Zelaya-Alberto and S.E.A.Z., her minor son, respectfully

move for a  stay of their imminent removal from the United States, which is scheduled for

tomorrow, December 3, 2015.  If removed to  their home country of El Salvador, they face a very

real possibility of being killed. Petitioners  filed a petition of habeas corpus on December 2, 2015.

This stay motion is based on that  pleading and a supporting Memorandum of Law.

Dated: December 2, 2015          Respectfully submitted,

                By:    */s/ Mary Catherine Roper*
                        Mary Catherine Roper
                        American Civil Liberties Union of
                        Pennsylvania
                        P.O. Box 60173

Philadelphia, PA 19102
T: 212-592-1513 x116
*mroper@aclupa.org*

Lee Gelernt*
Lindsay Nash*
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2616
*lgelernt@aclu.org*
*lnash@aclu.org*

Jennifer Chang Newell*
Stephen Kang*
American Civil Liberties Union Foundation
Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-0774
*jnewell@aclu.org*
*skang@aclu.org*

*Pro Hac Vice motions pending*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Karen Margarita Zelaya Alberto and S.E.A.Z. (a minor),<br><br>                      *Petitioners*,<br><br>    v.<br><br>U.S. Department of Homeland Security ("DHS"); U.S. Customs and Border Protection ("CBP"); U.S. Citizenship and Immigration Services ("USCIS"); U.S. Immigration and Customs Enforcement ("ICE"); Jeh Johnson, Secretary of DHS; Loretta E. Lynch, Attorney General of the United States; R. Gil Kerlikowske, Commissioner of CBP; Sarah Saldaña, Director of ICE; Leon Rodriguez, Director of USCIS; Velda Griffin, Philadelphia Field Director, CBP; Thomas Decker, Philadelphia Field Office Director, ICE; Diane Edwards, Director, Berks County Residential Center,<br><br>                      *Respondents*. | CASE NO. _____ |

## MEMORANDUM IN SUPPORT OF PETITIONERS' EMERGENCY MOTION FOR STAY OF REMOVAL

Karen Margarita Zelaya Alberto and her 5-year-old son, Petitioner S.E.A.Z.,[1] respectfully petition this Court for an emergency stay of removal from the United States until the resolution of their Petition for Writ of Habeas Corpus (hereinafter, habeas petition). Counsel for Petitioners are informed they are **scheduled to be removed tomorrow (December 3, 2015) at 9:25 a.m. Eastern Time**.

Petitioners respectfully request that the Court issue a temporary stay until the Court has an opportunity to make a decision on its jurisdiction to hear this case.

---

[1] Pursuant to Federal Rule of Civil Procedure 5.2(a), the minor Petitioner is identified by his initials.

1

If Petitioners are returned to their home country of El Salvador, they face grave harm or

even death at the hands of members of the Mara Salvatrucha ("MS-13"), a deadly gang that

operates throughout El Salvador. *See Nken v. Holder*, 556 U.S. 418, 436 (2009) ("Of course

there is a public interest in preventing aliens from being wrongfully removed, particularly to

countries where they are likely to face substantial harm."). A stay is necessary not only to

prevent irreparable harm to and possible death of Petitioners, but as a practical matter, to

preserve this Court's ability to adjudicate the petition.

Petitioners are now subject to a removal order and are in need of an immediate stay

pending the outcome of their habeas petition, which raises claims under the Immigration and

Nationality Act ("INA"), the statute's regulations, and the Due Process Clause.

## LEGAL STANDARD

The Supreme Court in *Nken v. Holder*, 556 U.S. 418, 436 (2009), held that traditional

stay factors govern a court's authority to stay an alien's order of removal. The four factors to

consider when determining whether a stay should be issued are the following: "(1) whether the

stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether

the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will

substantially injure the other parties interested in the proceeding; and (4) where the public

interest lies." *Id.* at 436 (quoting *Hilton v. Braunskill*, 481 U. S. 770, 776 (1987)).

## I.     PETITIONERS WILL BE IRREPARABLY HARMED IF REMOVED FROM THE UNITED STATES.

If they are returned to El Salvador, the potential harms to Petitioners far outweigh any

harm to the government resulting from a stay of removal. Given the extreme and irreparable

harm that Petitioners would likely face if they were returned to El Salvador, the balance of

hardships weighs heavily in their favor. Because Petitioners also demonstrate a likelihood of success on the merits of this case, *see infra* Section II, this Court should stay their removal to allow full briefing and argument on this matter of life and death. *See Nken v. Holder*, 556 U.S. 418, 436 (2009).

Karen is a 22-year-old Salvadoran mother, who, together with her 5-year-old son S.E.A.Z. is seeking protection in the United States. Petitioners fled to the United States after receiving threats from members of the MS-13, who believe that Karen witnessed members committed a crime and that she tried to stop it. Karen suffered domestic abuse at the hands of her former partner, who is a member of a dangerous and notorious gang. She fears that she and her son will face persecution or death if returned to El Salvador.

Gang is also widespread in El Salvador, and gangs are in de facto control of many areas. It is also well documented that gangs in El Salvador retaliate against individuals or families who report them to the authorities, refuse to cooperate with the gang's demands, and/or who are seen as opposing them. *See, e.g.*, *Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1083 (9th Cir. 2013) (granting asylum and approving social group after petitioner persecuted after she "testified in a criminal trial against members of a gang who killed her father in El Salvador"); *Crespin-Valladares*, 632 F.3d 117, 125 (4th Cir. 2011) (holding "BIA committed legal error" in concluding "'those who actively oppose gangs in El Salvador by agreeing to be prosecutorial witnesses,'" including family members who suffered persecution on account of familial relation, "does not constitute a cognizable social group").

Understandably terrified for her family, Karen and her son fled El Salvador to seek protection in the United States in August 2015. They were apprehended in Texas after entering

3

the United States.  Petitioners were eventually transferred to the Berks County Residential Center in Leesport, Pennsylvania, where they are currently detained.

In sum, Petitioners clearly face irreparable harm if removed from the United States, and meet the remaining factors for a stay.

## II.  PETITIONERS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS FOR RELIEF.

Petitioners' habeas petition demonstrates that they are likely to succeed on the merits of their claims under the INA, the INA's implementing regulations, and the Due Process Clause of the Fifth Amendment.  At an absolute minimum, their claims are sufficiently serious and substantial that they are deserving of more deliberate investigation.

As shown below, Petitioners' rights were violated in two ways.  First, the negative credible fear determination was legally erroneous.  Second, the procedures were inadequate. Finally, there is no question that this Court has jurisdiction over this case.  *See* Section D, *infra*.

### A.  Statutory Background

As Petitioners' habeas petition explains, Petitioners are in "expedited removal" pursuant to 8 U.S.C. § 1225.  Under 8 U.S.C. § 1225(b)(1), certain persons who are seeking admission to the United States may be placed into an "expedited removal" system.  Section 1225(b)(1)(A)(iii) also authorizes the Attorney General to apply expedited removal to certain inadmissible noncitizens located *within the United States* "who have not been admitted or paroled" and who cannot demonstrate that they have been continuously physically present in the United States for two years. *Id.*  Pursuant to that provision, in 2004 the Attorney General began to apply expedited removal to persons within the U.S. who are allegedly apprehended within 100 miles of the border and who are unable to demonstrate that they have been physically present in the U.S. for

4

14 days. *See* 69 Fed. Reg. 48877 (Aug. 11, 2004). Because Petitioners entered the United States and were arrested in Texas, they were placed into expedited removal under this authorization.

All persons subject to expedited removal are entitled to an interview with an asylum officer if they indicate either an intention to apply for asylum or a fear of return to their country. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 235.3(b)(4) (if "an alien subject to the expedited removal provisions indicates an intention to apply for asylum, or expresses a fear of persecution or torture, or a fear of return to his or her country, the inspecting officer shall not proceed further with removal of the alien until the alien has been referred for an interview by an asylum officer"); 8 U.S.C. § 1225(b)(1)(B) (setting forth procedure for interviews by asylum officers to determine whether the noncitizen has a "credible fear of persecution"); *see also* 8 C.F.R. § 208.30.

If the noncitizen is referred to an asylum officer, the officer conducts a "credible fear interview" which is designed "to elicit all relevant and useful information bearing on whether the applicant has a credible fear of persecution or torture." 8 C.F.R. § 208.30(d). The asylum officer must "conduct the interview in a non-adversarial manner, separate and apart from the general public." 8 C.F.R. § 208.30(d). If the asylum officer determines that an individual "is unable to participate effectively in the interview because of illness, fatigue, or other impediments, the officer may reschedule the interview." 8 C.F.R. § 208.30(d)(1). The asylum officer is required to determine that the individual "has an understanding of the credible fear determination process." 8 C.F.R. § 208.30(d)(2).

The statute and the regulations further provide that the noncitizen has a right to "consult with a person or persons of the alien's choosing prior to the interview or any review thereof." 8 U.S.C. § 1225(b)(1)(B)(iv); 8 C.F.R. § 208.30(d)(4). "Any person or persons with whom the

alien chooses to consult may be present at the interview," and may be allowed to present a statement at the end of the interview.  8 C.F.R. § 208.30(d)(4).  If the noncitizen "is unable to proceed effectively in English," and the asylum officer "is unable to proceed competently in a language chosen by the alien," the officer "shall arrange for the assistance of an interpreter in conducting the interview."  8 C.F.R. § 208.30(d)(5).

At the conclusion of the interview, the asylum officer must create a written summary of the "material facts" provided during the interview, review that summary with the individual and provide him/her with the opportunity to correct any errors.  8 C.F.R. § 208.30(d)(6).  If the asylum officer makes a negative credible fear determination, the officer must provide a written record of the determination that "shall include . . .  the officer's analysis of why, in light of [the] facts, the alien has not established a credible fear of persecution."  8 USC § 1225(b)(1)(B)(iii)(II).  In addition, upon the individual's request, the agency must provide for prompt review of the asylum officer's determination by an immigration judge. 8 U.S.C. § 1225(b)(1)(B)(iii)(III); *see also* 8 C.F.R. § 208.30(g)(1).

The immigration judge "may receive into evidence any oral or written statement which is material and relevant to any issue in the review."  8 C.F.R. 1003.42(c).  The statute specifies that the IJ review must include an opportunity for the individual "to be heard and questioned by the immigration judge, either in person or by telephonic or video connection . . . ." 8 U.S.C. § 225(b)(1)(B)(iii)(III).

To prevail ultimately on an asylum claim, the applicant need only establish that there is a 10% chance that he or she will be persecuted on account of one of the listed grounds, including belonging to a particular social group, such as a group persecuted by gangs.  To prevail at the *credible fear* interview, however, Congress did not require applicants to establish their ultimate

entitlement to asylum, *i.e.*, a 10% chance of being persecuted. Rather, to prevail at a credible

fear interview, the applicant need only show "a significant possibility, taking into account the

credibility of the statements made by the alien in support of the alien's claim and such other facts

as are known to the officer, that the alien could establish eligibility for asylum . . . ." 8 U.S.C.

§ 1225(b)(1)(B)(v). Thus, applicants need only show a *significant possibility* that there is a *10%*

*chance* of persecution if they are returned to their home country.

If a noncitizen is found by the asylum officer to have a "credible fear," she may *not* be

removed until her application for asylum is adjudicated. *See* 8 U.S.C. § 1225(b)(1)(B)(ii) ("If

the officer determines at the time of the interview that an alien has a credible fear of persecution .

. . , the alien shall be detained for further consideration of the application for asylum.").

Thus, noncitizens who satisfy the credible fear standard are taken out of the expedited

removal system altogether and placed into the regular (INA Section 240) removal process. 8

U.S.C. § 1229; INA § 240 (providing for full hearing before an immigration judge; adverse

decisions can be appealed to the Board of Immigration Appeals and a federal court of appeals).

At the Section 240 hearing, they will have the opportunity to develop a full record before an

immigration judge, and may appeal an adverse decision to the BIA and court of appeals. 8

C.F.R. § 208.30(f); *see also* 8 U.S.C. § 1225(b)(1)(B)(ii).

The reason for the low threshold at the credible fear stage is straightforward. An asylum

claim is highly fact-specific and often will take a significant amount of time and resources to

develop properly, including expert testimony and extensive country conditions evidence. It is

thus highly unrealistic for applicants in the expedited removal system, especially if

unrepresented, to present an adequate asylum claim while in detention and under severe time

constraints. Accordingly, by establishing a low threshold at the credible fear stage, Congress

ensured that potentially valid asylum claims could be developed properly and presented in a full Section 240 hearing before an immigration judge, with a statutorily-mandated appeal process should the applicant receive an adverse decision.

### B. Respondents Erroneously Concluded That Petitioners Do Not Satisfy The Credible Fear Standard.

Asylum law is complex and resource-intensive.[2]  Accordingly, as discussed above, the credible fear standard is purposely low because it is impossible for applicants to fully establish their right to asylum or torture relief in an expedited process.  Under the correct standard, there is no question that Petitioners should satisfy this low threshold.

Furthermore, multiple courts have recognized the "common sense proposition" that children are even more vulnerable to persecution than adults, rendering their interests in fair adjudication of their claims arguably even more serious. *Hernandez-Ortiz v. Gonzales*, 496 F.3d 1042, 1045-46 (9th Cir. 2007); *Jorge-Tzoc v. Gonzales*, 435 F.3d 146, 150 (2d Cir. 2006) (holding that agency was required to analyze persecution from perspective of a "small child totally dependent on his family and community").

Here, Petitioners easily pass the low threshold credible fear standard.  The facts outlined in the habeas petition are more than sufficient for her to pass the low credible fear standard – which requires only a "significant possibility" that there is a 10% chance of the applicant being

---

[2] Establishing membership in a particular social group is one of the most complicated eligibility requirements, and has given rise to numerous legal opinions addressing its complexities. *See, e.g., Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1083-85 (9th Cir. 2013) (en banc) (explaining complexities of particular social group doctrine); *Aldana-Ramos v. Holder*, __ F.3d __, 2014 WL 2915920, *4-5 (1st Cir. Jun. 27, 2014) (discussing flaws in BIA's particular social group analysis in Guatemalan gang-related asylum case); *Cordova v. Holder*, __ F.3d __, 2014 WL 3537873 (4th Cir. 2014) (criticizing BIA's framing of Salvadoran petitioner's social group in case raising gang-based asylum claim).  Often, applicants must rely on expert testimony to make such claims.

persecuted in her home country. *See, e.g., Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1083 (9th Cir. 2013) (granting asylum and approving social group after petitioner persecuted after she "testified in a criminal trial against members of a gang who killed her father in El Salvador"); *Crespin-Valladares*, 632 F.3d 117, 125 (4th Cir. 2011) (holding "BIA committed legal error" in concluding "'those who actively oppose gangs in El Salvador by agreeing to be prosecutorial witnesses,'" including family members who suffered persecution on account of familial relation, "does not constitute a cognizable social group").

Since, with an adequate hearing, Karen would be able to show far more than a "significant possibility" of establishing a claim for asylum, she should be given a new hearing that affords her the opportunity to be heard, as well as immigration judge review.

### C.   Petitioners Did Not Receive an Adequate Hearing.

Petitioners' habeas petition shows that Respondents violated the statute, regulations, and Due Process in multiple respects.

For example the asylum officer violated the regulations by issuing a negative credible fear determination without providing any reasoning or analysis, in violation of 8 U.S.C. § 1225(b)(1)(B)(iii)(II).   As further example, the asylum officer failed to continue the interview in light of S.E.A.Z.'s serious medical issue, and Karen was unable to focus as a result. *See* 8 C.F.R. § 208.30(d)(1) (providing that if the asylum officer determines that an individual "is unable to participate effectively in the interview because of illness, fatigue, or other impediments, the officer may reschedule the interview"). As a result of this inadequate process, Petitioners were denied a meaningful opportunity to apply for political asylum, withholding of removal, and

9

Convention Against Torture constitute clear violations of the statutes and regulations providing for those forms of relief.[3]

In addition to these statutory and regulatory violations, Respondents also have violated Petitioners' rights under the Due Process Clause. It is well-established that noncitizens who—like Petitioners—have entered the country, even illegally, are protected by the Due Process Clause. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, *unlawful*, *temporary*, or permanent.") (emphasis added) (internal citations omitted); *Plyler v. Doe*, 457 U.S. 202, 215 (1982) ("That a person's initial entry into a State, or into the United States, was unlawful, and that he may for that reason be expelled, cannot negate the simple fact of his presence within the State's territorial perimeter . . . . And until he leaves the jurisdiction—either voluntarily, or involuntarily in accordance with the Constitution and laws of the United States—he is entitled to the equal protection of the laws that a State may choose to establish."); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) (noting that Fifth Amendment uses the term "person" and "protects every one of these persons from deprivation of life, liberty, or property without due process of law. Even

---

[3] The withholding of removal (also known as "restriction on removal") statute provides that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3). To qualify for relief under the Convention Against Torture ("CAT"), the applicant must show that she "more likely than not" will be tortured upon return. *See* 8 C.F.R. §§ 208.16(c), 208.18, 1208.16(c), 1208.18; *see also* United Nations Convention Against Torture ("CAT"), Art. 3, as implemented in the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681, 2681-822 (1998) (codified as Note to 8 U.S.C. § 1231).

one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection.") (internal citations omitted); *Yamataya v. Fisher*, 189 U.S. 86, 101 (1903) (holding that the government cannot "arbitrarily [] cause an alien who has entered the country, and has become subject in all respects to its jurisdiction, and a part of its population, although alleged to be illegally here, to be taken into custody and deported without giving him all opportunity to be heard upon the questions involving his right to be and remain in the United States."); *Wong Wing v. United States*, 163 U.S. 228, 235, 238 (1896) (stating, in case involving legislation concerning those "not lawfully entitled to be or remain in the United States," that "all persons within the territory of the United States are entitled to the protection guarantied" by Fifth and Sixth Amendments).

Further, the Third Circuit and numerous other courts have recognized that the asylum statutes and regulations confer a constitutionally-protectable liberty interest under the Fifth Amendment. *See, e.g.*, *Khouzam v. Attorney Gen. of U.S.*, 549 F.3d 235, 256 (3d Cir. 2008) ("We have repeatedly held that aliens detained immediately upon arrival without proper documentation are entitled to due process of law during deportation proceedings implicating statutory relief from removal."); *id.* at (explaining that "we have recognized this right to due process not only where, as here, mandatory statutory relief from removal was at issue, . . . but also where the alien was seeking discretionary statutory relief"); *Cham v. Attorney General of U.S.*, 445 F.3d 683, 693-94 (3d Cir. 2006) (explaining that "although Cham has no constitutional right to asylum, he was entitled, as a matter of due process, to a full and fair hearing on his application," and finding due process violation where the "immigration judge continuously interrupted the petitioner's testimony, preventing important parts of his story from becoming part of the record" in his asylum application); *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 553

11

(9th Cir. 1990) (recognizing that "the Refugee Act establish[ed] the right of aliens to apply for

asylum"); *Maldonado-Perez v. I.N.S.*, 865 F.2d 328, 332 (D.C. Cir. 1989) (stating that noncitizen

has "Fifth Amendment procedural due process right to petition the government for political

asylum"); *see also Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956-57 (9th Cir. 2012) (en banc)

(recognizing that statutes and regulations implementing Convention Against Torture "generate

interests cognizable as liberty interests under the Due Process Clause").[4]

Thus, Petitioners have a constitutionally-protected interest in applying for asylum and

other forms of relief from persecution. Given the danger they will face if they are returned to El

Salvador, their interest in a fair hearing of their claims could not be greater. *See, e.g., Bridges v.

Wixon*, 326 U.S. 135, 164 (1945) ("The impact of deportation upon the life of an alien is often as

great if not greater than the imposition of a criminal sentence. . . . Return to his native land may

result in poverty, persecution, even death."); *see also I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421,

449 (1987) ("Deportation is always a harsh measure; it is all the more replete with danger when

the alien makes a claim that he or she will be subject to death or persecution if forced to return to

---

[4] *See Gutierrez-Rogue v. I.N.S.*, 954 F.2d 769, 773 (D.C. Cir. 1992) (stating that it is
"clearly established in this circuit that . . . 'an alien who has unlawfully entered the United States
has a Fifth Amendment procedural due process right to petition the government for political
asylum'") (quoting *Maldonado-Perez v. I.N.S.*, 865 F.2d at 332); *see also Oshodi v. Holder*, 729
F.3d 883 (9th Cir. 2013) (en banc) (finding due process violation where IJ cut off testimony of
applicant for asylum, withholding, and CAT relief); *Kericiku v INS*, 314 F.3d 913, 918 (7th Cir.
2003) (per curiam) (finding due process violation in asylum applicant's case); *Amadou v. INS*,
226 F.3d 724, 726-28  (6th Cir. 2000) (holding that alien was deprived of due process right to
full and fair hearing on his applications for asylum and other discretionary relief because of
interpreter's incompetence); *de la Llana Castellon v. I.N.S.*, 16 F.3d 1093, 1100 (10th Cir. 1994)
(recognizing that "while there is no constitutional right to political asylum itself, noncitizens,
even those charged with entering the country illegally, are entitled to due process when
threatened with deportation," and holding that noncitizens' due process rights had been violated
with respect to their asylum application); *Haitian Refugee Center v. Smith*, 676 F.2d 1023, 1038
(5th Cir. 1982) (holding that federal asylum law and regulations "created, at a minimum, a
constitutionally protected right to petition our government for political asylum")).

his or her home country."); *Wong Yang Sung v. McGrath*, 339 U.S. 33, 50 (1950) ("A deportation hearing involves issues basic to human liberty and happiness and, in the present upheavals in lands to which aliens may be returned, perhaps to life itself.").

Here, the inadequate process afforded Petitioners unlawfully deprived them of a meaningful opportunity to apply for and substantiate their applications for relief from persecution. Respondents' conduct violates the Due Process Clause. *See, e.g., Orantes-Hernandez v. Meese*, 685 F. Supp. 1488, 1504 (C.D. Cal. 1988) (holding that coercion by INS officers and other misconduct deprived plaintiffs "of their constitutional right to due process and statutory right to apply for political asylum and withholding of deportation").

### D.  This Court Has Jurisdiction Over Petitioner's Claims.

Petitioners are raising legal and constitutional challenges under the INA, the statute's implementing regulations, and the Due Process Clause.  Because Petitioners raise legal and constitutional questions, their claims may be raised in a habeas action.  The Court has jurisdiction under 8 U.S.C. § 1252(e)(2), which provides for district court habeas review of expedited removal orders.  The Court also has jurisdiction under 28 U.S.C. 2241, and the Suspension Clause.[5]

As an initial matter, there is no question that the Court has jurisdiction to issue a stay to "determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002) ("a federal court always has jurisdiction to determine its own jurisdiction"). *See also Papageorgiou v. Gonzales*, 413 F.3d 356, 357 (3d Cir. 2005) (explaining that "this Court has always retained 'jurisdiction to determine our jurisdiction'").

---

[5]  Petitioner also has asserted jurisdiction under 28 U.S.C. § 1331.

More fundamentally, two centuries of unbroken case law, as well as historical practice, make clear that the Court has jurisdiction to consider Petitioners' legal and constitutional challenges to their removal orders.   If the immigration statutes were somehow read to preclude this Court from reviewing Petitioners' constitutional and legal claims, it would patently violate the Suspension Clause.  Indeed, there has never been a time in the history of the country in which noncitizens who have entered the United States were not permitted to challenge the legal validity of their removal orders.  Instead, every single time Congress has tried to eliminate legal challenges over removal orders—and there have been several attempts over the past two centuries—the Supreme Court has rebuked the effort.  If the Court were to conclude that it has no power to review Petitioners' legal and constitutional claims, it would be an historical first.

Because this case concerns critical issues of first impression in this Circuit as well as urgent matters of life and death, if this Court were to have any concerns about its jurisdiction, Petitioners respectfully request that, at a minimum, the Court issue a stay of removal pending its determination on jurisdiction.  Petitioners are prepared to submit additional briefing at the Court's request.  If the Court then concludes that it has jurisdiction over the habeas petition, Petitioner requests that the Court extend the stay to determine the merits of Petitioners' claims challenging their expedited removal orders.

### 1.  The Expedited Removal Statute Provides Jurisdiction Over Petitioners' Constitutional and Legal Claims

Although in ordinary removal cases judicial review is obtained in the court of appeals by petition for review, in this case Petitioners received an "expedited removal" order pursuant to INA § 235(b), 8 U.S.C. § 1225.  A challenge to an expedited removal order is properly brought in a district court habeas action pursuant to 8 U.S.C. § 1252(e)(2).  *See* 8 U.S.C. § 1252(e)(2) (granting habeas to review certain claims in expedited removal cases).  *See also* § 1252(a)(1)

14

(channeling review of removal orders to the courts of appeals but exempting expedited removal orders under INA § 235(b)(1)).

In particular, § 1252(e)(2)(B) provides jurisdiction over "whether the petitioner was ordered removed under such [expedited removal] section." Section 1252(e)(5) then elaborates upon the scope of § 1252(e)(2)(B). Section 1252(e)(5) provides in full:

**Scope of Inquiry**

In determining whether an alien has been ordered removed under [the expedited removal statute], the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal.

In light of § 1252(e)(5), it is clear that Congress was intending to bar review only of whether a noncitizen is "actually inadmissible" or "entitled to any relief from removal." *Id.* Here, however, Petitioners are not challenging whether they are entitled to be admitted to the United States or even their ultimate entitlement to asylum relief. Rather, Petitioners are arguing that they did not receive a fair credible fear interview and that they should have passed their credible fear screening. If they prevail on the claims raised in this petition, they will not be entitled to admission to the United States, nor will they be entitled to a grant of asylum. Their relief would be limited: they would be given a new credible fear interview. If they prevail at that interview, they would be taken out of the expedited removal system and given a regular immigration judge hearing under Section 240 of the INA, 8 U.S.C. § 1229a, where they would have the opportunity to develop their asylum claims more fully.

Thus, § 1252(e)(5) does not preclude review, and § 1252(e)(2)(B) permits review of the type of threshold question presented here: whether Petitioners were "ordered removed" within the meaning of the statute when their removal order is in violation of the statute, its regulations, and the Constitution. Indeed, there must be review of whether the negative credible fear

15

determination was properly made – a prerequisite for issuing the expedited removal order. Otherwise the government could insulate the entire credible fear process, thereby subjecting bona fide asylum applicants to expedited removal even though Congress intended them to have full immigration judge hearings.

Notably, the Ninth Circuit in *Smith v. U.S. Customs and Border Protection*, 741 F.3d 1016 (9th Cir. 2014), addressed a claim conceptually similar to Petitioners' here. There, the Court found that it had jurisdiction to decide whether the noncitizen was properly in the expedited removal system at all. Exercising its jurisdiction, the Court then found, on the merits, that the Immigration and Nationality Act permitted Canadians to be placed into the expedited removal system, and simply refused to review the *facts* of the noncitizen's visa.[6]

In short, the expedited removal statute permits the type of narrow legal claim raised by Petitioners. At a minimum, there is sufficient ambiguity in the statute given Section 1252(e)(5)'s two sentences that the Court should construe the statute to provide jurisdiction over Petitioners' claims, thereby avoiding the Suspension Clause problems that would be triggered by a statute that foreclosed all review over legal claims. In light of the doctrine of constitutional avoidance, and the strong presumption in favor of judicial review, any ambiguity should be resolved in favor of review. *See INS v. St. Cyr*, 533 U.S. 289, 301 n. 13 (2001) ("The fact that this Court would be required to answer the difficult question of what the Suspension Clause protects is in and of itself a reason to avoid answering the constitutional questions that would be raised by concluding that review was barred entirely."); *Khouzam v. Attorney Gen. of U.S.,* 549 F.3d 235, 244 (3d Cir.

---

[6] *But see, e.g.*, *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133 (9th Cir. 2008); *Khan v. Holder*, 608 F.3d 325, 330 (7th Cir. 2010); *Turgerel v. Mukasey*, 513 F.3d 1202, 1205 (10th Cir. 2008); *Brumme v. INS*, 275 F.3d 442, 447-48 (5th Cir. 2001). These cases are easily distinguishable, however, as they involved arriving aliens rather than noncitizens who, like Petitioners here, had made an entry onto U.S. soil, and they did not consider claims, like those of Petitioners, concerning the credible fear process.

2008) ("The Supreme Court established in *INS v. St. Cyr,* 533 U.S. 289 (2001), that there is a 'longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction.'"); *Kolkevich v. Att'y Gen.*, 501 F.3d 323, 334 (3d Cir. 2007) (adopting an "alternative interpretation" of the REAL ID Act that would permit judicial review of petitioner's removal order, to avoid declaring that statute unconstitutional under the Suspension Clause); *id.* (explaining that the Court must adopt an "alternative interpretation" preserving judicial review if such an interpretation is "fairly possible"). If, however, this Court were to find that the expedited removal statute does preclude review over Petitioners' claims, then the jurisdictional restrictions violate the Suspension Clause, as explained below.

## 2. The Expedited Removal Statute Violates the Suspension Clause if it Precludes Review of the Legal Validity of Petitioners' Removal Order

Most fundamentally, legal and constitutional claims must be reviewable in habeas by virtue of the Suspension Clause. Thus, even if the statutory grants of jurisdiction did not provide review of Petitioners' claims, they would be reviewable by virtue of the Suspension Clause. As the Supreme Court has held, constitutional and legal claims, including the application of law to fact, must be reviewable in habeas.

The Suspension Clause, Article I, Section 9, Clause 2, protects the right of all noncitizens to judicial review of the legal validity of their removal orders. "Because of that Clause, some 'judicial intervention in deportation cases' is unquestionably 'required by the Constitution.'" *Kolkevich v. Att'y Gen.*, 501 F.3d at 332 (quoting *INS v. St. Cyr,* 533 U.S. 289, 300 (2001) (quoting *Heikkila v. Barber,* 345 U.S. 229(1953))) (some internal quotation marks omitted).

In *St. Cyr*, the Supreme Court made several critical points clear: First, that noncitizens have always had judicial review to challenge their deportation orders; second, that at a minimum, the *scope* of that review must include both constitutional and legal challenges to deportation

17

orders; and third, that the absence of such review would violate the Suspension Clause. *Id.* at 300-08; *id.* at 306 ("In case after case, courts answered questions of law in habeas corpus proceedings brought by aliens challenging Executive interpretations of the immigration laws."). *See also Khouzam v. Attorney Gen. of U.S.*, 549 F.3d 235, 244 (3d Cir. 2008) (recognizing that a repeal of habeas jurisdiction would "present a Suspension Clause problem" if no alternative forum for review were available); *Kolkevich*, 50 F.3d at 332 (recognizing that if the petitioner was "left without any opportunity for judicial review of his order of removal," "we would undoubtedly face exactly the 'serious constitutional question[ ]' regarding the Suspension Clause that the Supreme Court faced in *St. Cyr*"); *Muka v. Baker*, 559 F.3d 480, 483 (6th Cir. 2009) ("[T]he Supreme Court has noted that [the Suspension] Clause requires 'some judicial intervention in deportation cases.'" (quoting *St. Cyr*, 533 U.S. at 300)); *Singh v. Mukasey*, 533 F.3d 1103, 1106 (9th Cir. 2008) ("The Supreme Court has held that '[b]ecause of [the Suspension] Clause, some judicial intervention in deportation cases is unquestionably required by the Constitution.'" (quoting *St. Cyr*, 533 U.S. at 300)); *Lee v. Gonzales*, 410 F.3d 778, 783 (5th Cir. 2005) ("If it were correct that Congress had repealed both habeas review and all other avenues of review, the [*St. Cyr*] Court reasoned, a serious constitutional Suspension Clause question would be presented." (citing *St. Cyr*, 533 U.S. at 783)). *Accord North Jersey Media Group, Inc. v. Ashcroft*, 308 F.3d 198, 221 (3d Cir. 2002); *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 114 (2d Cir. 2008); *Lolong v. Gonzales*, 484 F.3d 1173, 1177 (9th Cir. 2007) (en banc); *De Ping Wang v. Ashcroft*, 484 F.3d 615, 618 (2d Cir. 2007); *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 326 (2d Cir. 2006) (same); *Ortiz-Alfaro v. Holder*, 694 F.3d 955, 958 (9th Cir. 2012) ("'[B]ecause the Suspension Clause unquestionably requires some judicial intervention in deportation cases,'" holding that depriving petitioner of "opportunity for judicial review of a

18

determination that he lacks a reasonable fear of persecution could raise serious constitutional concerns." (quoting *Lolong*, 484 F.3d at 1177)); *Saavedra de Barreto v. I.N.S.*, 427 F. Supp. 2d 51, 59 (D. Conn. 2006) ("A statute that does repeal habeas corpus jurisdiction would raise Suspension Clause issues if it entirely precludes review of a pure question of law by any court, as the Suspension Clause requires 'some judicial intervention in deportation cases.'" (quoting *St. Cyr*, 533 U.S. at 300)).

Even more recently, the Supreme Court expressly held in *Boumediene* that the denial of judicial review over legal claims violates the Suspension Clause, even for noncitizens deemed "enemy combatants" detained outside the United States at Guantanamo. *Boumediene v. Bush*, 553 U.S. 723, 771 (2008). *Boumediene* also reiterated the "uncontroversial" proposition that "habeas entitles the prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." 553 U.S. at 779 (quoting *St. Cyr*, 533 U.S. at 302).

The Suspension Clause unquestionably applies to Petitioners, who entered the United States before being placed in expedited removal proceedings. Indeed, in *Boumediene,* the Court made clear that the Suspension Clause extends even to people who have *never* entered the United States. And in *St. Cyr*, the Court's Suspension Clause analysis did not distinguish between noncitizens who were seeking admission at the border and those who had gained entry, and cited habeas cases involving both groups interchangeably. *See St. Cyr*, 533 U.S. at 312 n.36 (emphasizing "the historic use of [habeas] jurisdiction as a means of reviewing deportation *and* exclusion orders") (emphasis added).[7]  In fact, *St. Cyr*'s central holding that judicial review in

---

[7] An "exclusion" order was the historic term that applied to an arriving alien stopped at the border whom the Government wished to exclude from the United States. A "deportation" order was for someone who entered the country, even illegally.

immigration cases "is unquestionably required by the Constitution," *id.* at 300, was based in significant part on the historical availability of review over challenges to "exclusion" orders against noncitizens at the border. *Id.* at 305–06 ("In case after case, courts answered questions of law in habeas corpus proceedings brought by aliens challenging Executive interpretations of the immigration laws.") (citing, *inter alia*, cases involving noncitizens stopped at the border, including *United States v. Jung Ah Lung*, 124 U.S. 621 (1888); *Chin Yow v. United States*, 208 U.S. 8 (1908); *Nishimura Ekiu v. United States*, 142 U.S. 651 (1892); *Gegiow v. Uhl*, 239 U.S. 3 (1915)). To completely deny Petitioners review of pure legal and constitutional claims would be unconstitutional.

### III. THE REMAINING STAY FACTORS HEAVILY WEIGH IN FAVOR OF PETITIONERS

Finally, the issuance of a stay will not substantially injure the government, and would be in favor of the public interest. Indeed, it is in the government's interest to ensure that Petitioners are not removed in violation of the immigration statute and the Constitution. Ensuring Petitioners a meaningful opportunity to pursue their credible fear claims, and that they not be removed to a place where they face grave persecution or death, is also consistent with the public interest. *See Nken*, 556 U.S. at 436.

### CONCLUSION

In light of Petitioners' likelihood of success on the merits, and the grave and irreparable harm that they likely will suffer if returned to El Salvador, and the remaining stay factors, they respectfully request that this Court issue an Order staying their removal while the habeas petition is adjudicated. In the alternative, and at a minimum, Petitioners request that the Court issue a stay of their removal pending the Court's determination on jurisdiction.

Dated: December 2, 2015        Respectfully submitted,

By: */s/ Mary Catherine Roper*
Mary Catherine Roper
American Civil Liberties Union of Pennsylvania
P.O. Box 60173
Philadelphia, PA 19102
215-592-1513 x116
mroper@aclupa.org

Jennifer Chang Newell*
Stephen Kang*
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-0774
F:  (415) 395-0950
*jnewell@aclu.org*
*skang@aclu.org*

Lee Gelernt*
Lindsay Nash*
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
T:  (212) 549-2616
F:  (212) 549-2654
*lgelernt@aclu.org*
*lnash@aclu.org*

*Counsel for Petitioners*

*\*Pro Hac Vice motions forthcoming*

## CERTIFICATE OF SERVICE

I, Mary Catherine Roper, hereby certify that on this 2nd day of December 2015, I emailed a copy of the foregoing Emergency Motion for a Stay of Removal, along with the Memorandum and exhibits in support thereof to counsel for Defendant:

Erez Reuveni
United States Department of Justice
Office of Immigration Litigation-District Court Section
P.O. Box 868
Washington, D.C. 20044
erez.r.reuveni@usdoj.gov

*/s/  Mary Catherine Roper*
Mary Catherine Roper

1